

| | | |
|---|---|---|
| GEORGE DILLARD, *et al.*, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | Civil No. SA-16-CV-00854-RCL |
| v. | § | |
| | § | |
| FEDERAL CORPORATION, | § | |
| | § | |
| DEFENDANT. | § | |

---

**Memorandum Opinion:**
**Vacating Prior Order Dismissing Case [ECF No. 41]**
**Denying the Defendant's Motion to Dismiss [ECF No. 11]**

---

This case arises from a car accident that occurred in Piedras Negras, Mexico, on May 3, 2013. The accident allegedly occurred when on the tires on the plaintiffs' vehicle failed, causing the vehicle to veer to the side of the road and roll over, injuring the occupants. The plaintiffs sued Federal Corporation ("Federal"), a Taiwanese company that designed and manufactured the failed tire, for negligence and strict products liability. Federal moved to dismiss the case for lack of personal jurisdiction. The Court authorized jurisdictional discovery. At the end of discovery, the parties filed their respective briefs. The Court granted the ripe motion to dismiss, with an opinion to follow. ECF No. 41.

In the course of writing and revising this opinion, however, the Court realized that it erred in granting the motion to dismiss. Therefore, pursuant to Rule 60(b)(1),(6), the Court will vacate its prior order granting the motion to dismiss and dismissing this case and will instead deny the motion and allow this case to move forward. The following opinion explains the Court's reasoning.

1

## Analysis

The issue before the Court is whether the Court has personal jurisdiction over the defendant. "A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Texas's long-arm statute extends to the limits of federal due process. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 n.1 (5th Cir. 2007); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) ("Our long-arm statute reaches as far as the federal constitutional requirement for due process will allow.") (internal citations and quotation marks omitted); TEX. CIV. PRAC. & REM. CODE §§ 17.041–045. Therefore, these two requirements merge into one and the Court need only concern itself with the constitutional inquiry in this case.

The primary focus of a constitutional "personal jurisdiction inquiry is the defendant's relationship to the forum state." *Bristol Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779 (2017). The Fourteenth Amendment's Due Process Clause permits a state court (or a federal court sitting in diversity) to exercise personal jurisdiction only when a defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoted in BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)) (internal citations and quotation marks omitted). Using this analysis, the Supreme Court has "recognized two types of personal jurisdiction: 'general' (sometimes call 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol Meyers Squibb Co.*, 137 S. Ct. at 1779–80. The Court will look at each type of jurisdiction in turn.

## I.     The Court Lacks General Jurisdiction Over the Defendant.

"A court with general jurisdiction" over a defendant "may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* at 1780 (emphasis in original). A court only has general jurisdiction over a defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporate defendant is necessarily "at home" in its place of incorporation and in its principal place of business. *BNSF Ry. Co.*, 137 S. Ct. at 1558. So general jurisdiction is always available in those forums. It is also possible for general jurisdiction to be available in other forums when a corporate defendant's operations in those forums are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. But the Supreme Court has emphasized that such would be an "exceptional case." *Id.* And Justice Sotomayor has opined that such cases will almost never exist. *BNSF Ry. Co.*, 137 S. Ct. at 1560 ("[I]t is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation.") (Sotomayor, J., dissenting). The Court agrees with that assessment.

It is clear that Federal is not subject to general jurisdiction in Texas. It is not incorporated in Texas, but in Taiwan. Its principal place of business is not in Texas, but in Taiwan. And there is no plausible argument that Federal's contacts with Texas are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.

A quick comparison with the Supreme Court's recent decision in *BNSF Ry Co. v. Tyrrell* will help illustrate this last point. 137 S. Ct. 1549 (2017). The defendant in that case—BNSF Railway Company—had 2061 miles of railroad track in Montana, nearly 2,100 employees

in Montana, and an automotive facility in Montana. *Id.* at 1554. But even these contacts were not enough to make BNSF "at home" in Montana and to subject BNSF to general jurisdiction in Montana. *Id.* at 1559. Federal has fewer and less substantial contacts with Texas than BNSF did with Montana. Federal has no employees in Texas. Federal owns no property in Texas. That being so, Federal is not "at home" in Texas and not subject to general jurisdiction of courts in Texas.

## II. The Court Has Specific Jurisdiction Over the Defendant.

While general jurisdiction allows a court to hear any claim against a defendant, specific jurisdiction allows a court to hear only those claims that "'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127) (emphasis in original). Determining whether a court may exercise specific jurisdiction over a defendant requires the Court to examine three things:

> (1) Whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Bustos v. Lennon*, 538 F. App'x. 565, 567 (5th Cir. 2013). The Court will address each of these three prongs in turn.

### A. Minimum Contacts—Federal Has Purposeful, Minimum Contacts with Texas.

#### 1. The Court Will Not Apply the "Stream-of-Commerce-Plus" Test.

As an initial matter, the parties disagree as to the applicability of certain Supreme Court precedents to this case. Specifically, the parties disagree whether the Court should apply the reasoning from Justice O'Connor's plurality opinion in *Asahi Metal Indus. Co. v. Superior Court*

4

*of Cal.*, 480 U.S. 102 (1987). That opinion held that the "awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State" that can meet the minimum contacts requirement. *Asahi*, 480 U.S. at 112. Rather, the defendant must engage in "[a]dditional conduct" that "indicate[s] an intent or purpose to serve the market in the forum State." *Id.* This has been referred to as the "stream-of-commerce-plus" test. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014). Federal encourages the Court to apply this test.

But Justice O'Connor's opinion did not achieve majority status. And for that reason the Fifth Circuit has refused to follow it. Instead, the Fifth Circuit continues to apply a looser test for minimum contacts in stream of commerce cases derived from Justice Brennan's opinion in *Asahi*:

> [T]he minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. Under that test, mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.

*Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (internal citations and quotation marks omitted). The plaintiffs urge this Court to apply this looser test for minimum contacts.

Under Rule 4, this Court's personal jurisdiction is generally coextensive with that of a "court of general jurisdiction in the state where [this Court] is located." FED. R. CIV. P. 4(k)(1)(A). This Court is located in the great state of Texas. A Texas state court of general jurisdiction, pursuant to the holdings of the Supreme Court of Texas, would follow Justice O'Connor's opinion

in *Asahi* as the correct interpretation of the Fourteenth Amendment's minimum contacts requirement in stream of commerce cases. *Spir Star AG*, 310 S.W.3d at 873 ("[O]ur precedent generally follows Justice O'Connor's plurality opinion in *Asahi*, which requires some additional conduct—beyond merely placing the product in the stream of commerce—that indicates an intent or purpose to serve the market in the forum State.") (internal citations and quotation marks omitted). It seems, then, that this Court should follow the lead of Texas state courts and apply the more restrictive minimum contacts analysis set forth by Justice O'Connor's opinion in *Asahi*.

But despite the soundness of this Rule 4 analysis, the Fifth Circuit uses its own interpretations of the Due Process Clause when conducting jurisdictional analyses, not Texas (or other underlying States') interpretations. The Fifth Circuit has not (to this Court's knowledge) explicitly stated that district courts should not take state interpretations of the Due Process Clause into account pursuant to Rule 4(k)(1)(A); but the Fifth Circuit's persistent practice of applying its own, broader views of jurisdiction under the Due Process Clause seem to endorse, implicitly, such a view. At the very least, Federal has not cited any case in which the Fifth Circuit applied state interpretations of the Due Process Clause in a jurisdictional setting rather than its own.

At least one other court in this District has come to a similar conclusion. In *Denman Tire Corp. v. Compania Hulera Tornel, S.A. de C.V.*, No. DR-12-cv-027, 2014 WL 12564118 (W.D. Tex. Mar. 31, 2014), that court stated that though "it was counterintuitive for the Fifth Circuit to disregard the Texas Supreme Court's explicit definition of the reaches of its long-arm statute"—including the Texas Supreme Court's interpretations of the Due Process Clause—"the Fifth Circuit has nonetheless made clear that the issue is one of federal interpretation, not state interpretation." *Id.* at *9. This Court disagrees that the Fifth Circuit has made this issue "clear." None of the cases cited by the court in *Denman* include an explicit statement that, when a state

long-arm statue extends to the limits of the Due Process Clause, the interpretations of the Due Process Clause that matter are those of the Fifth Circuit rather than those of the state supreme court that actually has power to authoritatively interpret the statute. But the cases cited by the court in *Denman* do, at the very least, illustrate the Fifth Circuit's practice of using its own interpretations as opposed to a state court's interpretations. This Court agrees with its sister court that the Fifth Circuit's disregard of Texas Supreme Court interpretations of the Due Process Clause is "counterintuitive." Nevertheless, like its sister court, this Court feels bound, as an inferior federal court, to follow the Fifth Circuit's practice.

For these reasons, the Court will not apply the stream-of-commerce-plus test from Justice O'Connor's opinion in *Asahi*, as would the Texas Supreme Court. Rather, it will apply the looser, stream-of-commerce/awareness test from Justice Brennan's opinion in *Asahi* and Fifth Circuit precedent.

### 2. Federal Was Aware that its Tires Reached Texas through the Stream of Commerce.

Federal was aware that its tires were arriving in Texas through the stream of commerce and being sold there. First, Federal's corporate representative, Mr. Dawu Chen, admitted that Federal ships tires directly to customers at several locations in Texas, including Lubbock, ECF No. 39-5 at 23:12–25; Houston, *id.* at 38:18–39:1; San Antonio, *id.* at 39:7–11; Carrollton, *id.* at 53:22–54:13; and McAllen, *id.* at 39:2–6. Federal was aware that its tires were arriving in Texas through other states as well. *Id.* at 32:11–34:5 (discussing an e-mail thread between a Texas customer and a Federal employee concerning tires being shipped to McAllen, TX, from Ohio or California). Second, Mr. Chen also admitted that Federal was aware that it had end users of its tires located in Texas. *See id.* at 29:8–18 (discussing an end user in located in El Paso, TX); *id.* at 46:6–12 ("Q. And we've looked at some past e-mails from end users, which you've already said

are the people that actually use the tires, and those end[] users are in Texas. And you have directed those people to these various persons or companies that sell [your] tires in Texas, correct? A. That is correct."); *id.* at 51:21–24 ("Q. . . . Federal Corporation knows that there are consumers who are looking for Federal tires in Texas and helps them buy tires in Texas, correct? A. Yes."); *id.* at 134:24–135:2 ("Q. . . . Federal Corporation knows that it is – that its tires are being sold in Texas, correct? A. Yes."). So it is clear that Federal's tires arrived in Texas either through direct shipment or through the stream of commerce and that Federal was aware of this fact.

Despite these admissions, Federal sets forth several arguments that it does not maintain purposeful, minimum contacts with Texas.

First, Federal asserts that it neither knows nor cares whether the tires that it ships directly to Texas or that reach Texas through a chain of distribution will actually be sold to and used by end users in Texas. *Id.* at 40:19–23 ("It is logical to believe that the tires are sold within Texas. But we have no exact knowledge, and we don't really care about that. Our job is done when the tires arrive at the warehouse of these locations."). Thus, it had no awareness or "expectation that [its tires] would be purchased by or used by consumers in [Texas]." *Ainsworth,* 716 F.3d at 177.

The Court does not doubt that Federal does not care whether its tires are eventually sold and used in Texas or elsewhere; but the Court does not believe Federal when it says that it has no knowledge or expectation that its products will be sold and used there. First, we have already seen that Federal was aware that it had end users in Texas. ECF No. 39-5 at 29:8–18; *id.* at 46:6–12; *id.* at 109:7–8 ("A. We believe he's selling the tires in Texas, but maybe not limited to Texas."). Second, as Mr. Chen put it, "[i]t is logical to believe that the tires are sold within Texas." *Id.* at 40:19–20. Mr. Chen is right. When a company ships thousands of tires to various Texas

cities, it is logical to assume that those tires are being sold and used there. Another way to say this would be to say that Federal could expect its tires to be sold and used in Texas. At the least, then, Federal had an "expectation that [its tires] would be purchased by or used by consumers in [Texas]." *Ainsworth*, 716 F.3d at 177.

Second, Federal argues that "every fact Plaintiffs rely on in support of their argument is the result of either unilateral action of some third-party or Plaintiffs themselves; or is otherwise so attenuated that Federal cannot be deemed to have purposefully availed itself of the benefits and protections of the State of Texas." ECF No. 40 at 6. The Court disagrees. When Federal ships thousands of tires directly to Texas, it is not the result of a third-party's unilateral action. That is a first-party's direct interaction with Texas. Federal cannot say that it has no control of where it ships its own products. If it wanted, it could refuse to ship tires to Texas. It cannot avoid the creation of purposeful, minimum contacts by saying "my customer asked me to." Simply put, shipping directly to Texas because a customer asks you to creates a purposeful contact with Texas.

Beyond that, the entire point of the stream-of-commerce theory is to find cases where jurisdiction is appropriate even when a product was directed to a forum by a third-party. Consider *Asahi*. There, "Asahi did not design or control the system of distribution that carried its valve assemblies into California." *Asahi*, 480 U.S. at 121 (Brennan, J. concurring). In other words, Asahi's valve assemblies only ended up in California due to the unilateral actions of a third party. And yet, according to Justice Brennan (whose opinion the Fifth Circuit follows), because "Asahi was aware of the distribution system's operation, and [because] it knew that it would benefit economically from the sale in California of products incorporating its components . . . Asahi's regular and extensive sales of component parts to a manufacturer it knew was making regular sales of the final product in California" was sufficient "to establish minimum contacts with California."

*Id.* Federal has similar contacts with Texas. Federal ships some tires directly to Texas. Other tires it places into the stream of commerce with the awareness they could end up in Texas (as shown by Federal's efforts to connect Texas consumers with third-party dealers of Federal Tires, ECF No. 39-5 at 32:11–34:5). In no sense are these contacts "random, fortuitous, or attenuated." *Ainsworth*, 716 F.3d at 177. As such, Federal's arguments that its contacts with Texas should not count toward establishing jurisdiction because they involve third parties making decisions or are too attenuated fail.

### 3. Minimum Contacts—Conclusion

Federal ships thousands of tires to Texas. It ships some of those tires directly to Texas from Taiwan. Other tires arrive in Texas through intermediaries in other states. And many of those tires are sold in Texas to residents of Texas. The information revealed during jurisdictional discovery proves these facts. Therefore, Federal has "regular and extensive sales" in Texas that benefit it economically and of which it was fully aware. *Asahi*, 480 U.S. at 121 (Brennan, J. concurring). Therefore, under Justice Brennan's opinion in *Asahi* and the Fifth Circuit precedent following that case, Federal has established purposeful, minimum contacts with Texas.

But these contacts are sufficient to justify this Court's exercising jurisdiction over Federal only if the other two prongs of the specific jurisdiction test—relatedness and reasonableness—are also met. The Court now turns to the relatedness prong.

### B. Relatedness—The Plaintiffs' Cause of Action Arises Out of or Results from Federal's Contacts with Texas.

The second prong of the specific jurisdiction test is the relatedness prong. It asks "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Bustos*, 538 F. App'x. at 567. The Court finds that the plaintiffs' cause of action in this case does arise from Federal's forum-related contacts.

Federal's forum-related contacts in this case are those discussed in the previous section: purposefully putting thousands of tires into the stream of commerce with the awareness and expectation that at least some of those tires would be purchased and used in Texas. Here, the Federal tires were installed on a 2007 F-150 pickup truck. One of the plaintiffs, Mr. Jimenez, bought that truck in Texas.[1] Therefore, "the defendant's product made its way into the forum state while still in the stream of commerce." *Ainsworth*, 716 F.3d at 177. Now, the plaintiffs allege that one of the tires on that truck failed, causing a car crash and injuries to the plaintiffs. Because the allegation is that the offending tire was purposefully put into the stream of commerce by Federal with the awareness that a Texas consumer may purchase and use the product, the plaintiffs' cause of action arises out of or results from Federal's contacts with Texas.

Federal argues that, because the accident in question occurred not in Texas, but in Mexico, the plaintiffs' cause of action does not arise out of Federal's Texas contacts. Not so. It is well established that the unilateral act of a consumer/plaintiff bringing a good into a state "cannot satisfy the requirement of contact with the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). But that same act of taking a good to another state does not nullify the purposeful contacts a defendant has with a previous state. The plaintiffs in *World-Wide Volkswagen* could not sue the defendants in Oklahoma just because the plaintiffs travelled there and got injured there. But they could have sued the defendants in New York, where the defendants clearly had purposeful, minimum contacts, despite having been injured outside New York. The relevant contact was not the accident or the

---

[1] The plaintiffs failed to allege that the truck was bought in Texas in their complaint. But they did allege it in their response to the motion to dismiss. Normally, the Court would not consider facts raised for the first time in a response to a motion to dismiss. But because the Court authorized jurisdictional discovery in this case, ECF No. 25, it is only natural that the plaintiffs would cite new facts in their response that were not mentioned in their complaint. This fact should have been included in the complaint. But because the Court is already considering new facts as part of the response, it will not strain at a gnat to exclude this one.

injury. The relevant contact was the purposeful placing of the vehicle into the stream of commerce with the awareness that a consumer in the forum state could purchase and use the vehicle.

Here, Federal purposefully placed its products into the stream of commerce, knowing full well that some of those products would end up in the possession of Texas consumers. And that is what allegedly happened here—a Federal tire entered the stream of commerce and was purchased and used in Texas by Texans. That the injury occurred elsewhere does not change those contacts. But for Federal's act of placing tires destined for Texas in the stream of commerce, the accident allegedly would not have happened. Therefore, the accident and the plaintiffs' cause of action arises out of Federal's purposeful contacts with Texas, regardless of the place of injury.

For these reasons, the relatedness prong of personal jurisdiction is satisfied. The Court now proceeds to the third and final prong—reasonableness.

### C. Reasonableness—Exercising Jurisdiction Over Federal in this Court Comports with Fair Play and Substantial Justice.

The third prong of the personal jurisdiction test asks whether the exercise of jurisdiction in a particular case would be "reasonable and just according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945); *see also Bustos*, 538 F. App'x. at 567. "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe Co.*, 326 U.S. at 317). To make this determination, courts look at five factors: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

First, the burden imposed on Federal by litigating this dispute here would be substantial. Federal would need "not only to traverse the distance between [Federal's] headquarters in [Taiwan] and the [federal court in Texas], but also to submit its dispute . . . to a foreign nation's judicial system. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

But these concerns cannot overwhelm other factors. Otherwise, it would be impossible to resolve cross-border disputes in American courts at all. The Court also notes that the burden placed on international corporations by the requirement to litigate in an American court is not what it once was. Advances in travel and communications technology have lightened that burden greatly. This case provides the perfect example. Mr. Chen's deposition was conducted electronically, with no need for international travel. In addition, the practice of litigating in a foreign judicial system has become more and more commonplace as the world's economy has become ever more interconnected. So while the Court does not ignore that litigating this case in Texas will burden Federal, that burden alone does not make the exercise of jurisdiction in this case offensive to traditional notions of fair play and substantial justice.

Second, Texas's interest in adjudicating this dispute is great. Federal argues this is not so because the accident in question occurred in Mexico, not Texas. It is true that Texas's interest would be greater if the accident occurred in Texas. But it was mere happenstance that this accident occurred in Piedras Negras, Mexico—a border town—rather than in Texas. So Texas's interest is still great despite not being the place of injury. The plaintiffs are Texans. Texas has an interest in seeing its citizens justly compensated for their injuries. The offending tire entered Texas while

still in the stream of commerce and was purchased by Texans. Texas has an interest in ensuring that products entering its borders and purchased by its residents are safe.

Third, the plaintiffs are greatly interested in obtaining convenient relief. It would be even more burdensome to require the plaintiffs to litigate in Taiwan than it is to require Federal to litigate in the U.S. Federal has the resources to frequently travel internationally and to identify and hire excellent defense attorneys who are familiar with American law. It is far from clear that the plaintiffs have the resources required to go after Federal in Taiwan. If the plaintiffs are to obtain any relief from Federal at all, it will likely have to come from courts in Texas.

Federal argues that the plaintiffs' interest in obtaining relief is diminished because they have already settled one lawsuit related to this accident that was brought against Ford and against Jacinto Enterprises. There is some merit to this argument. The plaintiffs have already recovered something for their injuries. And should litigation go forward and should Federal lose, it would surely be entitled to an offset due to the earlier settlements. But these circumstances do not mean that the plaintiffs have no interest in further relief. The Court therefore finds that the plaintiffs' earlier settlements merit little weight in this analysis.

The Supreme Court has said that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even serious burdens placed on [an] alien defendant." *Asahi*, 480 U.S. at 114. So far, that is what the Court sees. Minimum contacts have been established and both the plaintiff and the forum have strong interests in the exercise of jurisdiction. But the Court must still consider the remaining factors. In *Asahi*, the Court addressed the last two factors together. *Id.* at 115. This Court will follow suit.

Fourth and fifth, the Court "consider[s] the interests of the several States, in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies." *Id.* (internal quotation marks removed). Like *Asahi*, this case requires the Court "to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by" a Texas court. *Id.* These policies and interests are "best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.*

Federal notes that evidence pertaining to the manufacture, design, testing, inspection, and sale of the subject federal tire is in Taiwan, not Texas. That may be so, but the burden involved in discovering this information in Taiwan and sending it electronically to Texas is no greater than the burden faced by any non-international defendant. Further, the truck, tire, and plaintiffs in question are not in Taiwan, but are in either Texas or Mexico, which is much closer to Texas than it is to Taiwan. Given the physical evidence's proximity to Texas and the nature of modern discovery, the Court cannot agree that Taiwan is a more convenient or efficient location for litigation than Texas.

Overall, the interests of the plaintiff and of Texas in litigating this suit in Texas are substantial. The burdens on Federal as an alien defendant, while substantial, are not so substantial as to outweigh those interests. This is especially so in light of the substantial contacts that Federal has in Texas. In light of these contacts, the strong interests of the plaintiffs and Texas in seeing this dispute litigated in Texas, the realities of modern international business and litigation, and the particular facts of this case, the Court concludes that this Court's exercise of personal jurisdiction over Federal in this instance does not offend traditional notions of fair play and substantial justice.

## Conclusion

Federal has purposeful, minimum contacts with Texas. Specifically, Federal put its tires into the stream of commerce with the expectation that some of those tires would be purchased in Texas and used by Texans. Federal's contacts with Texas gave rise to the plaintiffs' cause of action in this case. The plaintiffs allege that it was one of Federal's tires, carried into Texas in the stream of commerce and purchased in Texas by the plaintiffs, that caused the accident and their injuries. And this Court's exercise of jurisdiction over Federal does not offend traditional notions of fair play and substantial justice. Both the plaintiffs and Texas have substantial interests in this Court's exercise of jurisdiction. In light of Federal's contacts with Texas, those interests outweigh the burden of requiring Federal to litigate this case in this Court.

For these reasons, the Court will vacate its prior order under Rule 60(b)(1),(6), and deny Federal's motion to dismiss.

A separate order shall issue.

Signed: August _____, 2018

HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE